## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GLENDA WILLIAMS,

      Plaintiff,

v.                            CASE NO. 8:20-cv-1215-TPB-TGW

VAPOR RISING, INC., a Florida
Corporation, and JOSEPH
JOHN SCHAFFER, an individual.

      Defendant.

_____/

### REPORT AND RECOMMENDATION

      In this suit, the plaintiff, Glenda Williams, has filed two claims under the Fair Labor Standards Act ("FLSA") for unpaid overtime wages and retaliation against the defendants, Vapor Rising, Inc. ("Vapor Rising") and its sole owner and manager, Joseph John Schaffer ("Schaffer"). Both parties have filed cross-motions for summary judgment and accompanying responses and replies (see Docs. 76, 78, 86, 90, 93, 96)[1]. Additionally, the plaintiff has filed a Motion for Spoliation of Evidence and Miscellaneous Relief (Doc. 65), to which the defendants have filed a response (see Doc. 72). All three motions were referred to me by District Judge Thomas P. Barber for report and recommendation (see Doc. 81).

---

[1] see also Docs. 77, 85, 91.

1

Both motions for summary judgment should be denied. The plaintiff's motion is based primarily upon the plaintiff's own statements, and the defendants' motion is based primarily upon Schaffer's statements. Those statements are contradictory to a great extent. Moreover, there is little corroborating evidence for the parties' assertions. Thus, this case is a classic case of "she said, he said." Also, some of what each side is asserting seems implausible. Consequently, a reasonable jury could decide not to accept either side's version of the facts. Under these circumstances, neither side is entitled to summary judgment. Further, the plaintiff's claim of spoliation lacks merit.

I.

Vapor Rising is a chain store that sells, at both retail and wholesale, vape products, e-cigarettes, and other related merchandise (Doc. 1, p. 2). Schaffer, at the time relevant to this matter, was the sole manager and owner of the Vapor Rising store in Tampa, Florida (Doc. 78, p. 17). The plaintiff asserts that she worked at the store, under the supervision of Schaffer, from September 5, 2017, through April 3, 2020 (id., p. 18). The defendants, however, assert that she was not an employee until December 2019, and that before this time she was a customer who would, on occasion, perform odd jobs (Doc. 76, p. 2; Doc. 90, pp. 6, 8). In sum, both parties dispute almost all the factual matter surrounding the plaintiff's alleged employment.

2

As indicated, both parties dispute when the plaintiff began her employment with Vapor Rising. The plaintiff asserts that she began employment with Vapor Rising on September 5, 2017.[2] (Doc. 78, p. 1) The defendants assert that she was not a regular employee on the payroll until December 2019 and that there is no record that she performed any work in 2017 (Doc. 76, p. 2; Doc. 72, pp. 2–3). Thus, the defendants assert that prior to this time, during 2018 and 2019, the plaintiff and her husband, Vincent Williams, performed odd jobs, most often in exchange for product and, only sometimes, in exchange for cash (Doc. 90, p. 6).

The parties also dispute the actual work the plaintiff performed, the payment she received, and the number of hours she worked while at Vapor Rising.

With respect to work performed, the defendants assert that the plaintiff only became an employee in December 2019, and from that time until her termination on April 3, 2020[3], she worked as a "salesperson" (Doc. 76, p. 2; Doc. 72, p. 3). Prior to December 2019, they assert that she only performed odd jobs during 2018 and 2019, which included "mowing Defendant Schaffer's lawn . . ., cleaning trash from around the store, [and] driving a package to the post office . . . ." (Doc. 90, p. 8). However, the plaintiff contends that her role "[was] the same both

---

[2] see also Doc. 76-1, p. 19.
[3] The defendants provide the date April 2, 2020, as the date of the plaintiff's termination in their motion for summary judgment. However, the plaintiff states the date April 3, 2020, in her statement of undisputed facts.

before and after December 2019," which included odd jobs and those tasks of a salesperson, such as "working behind the cash register, help[ing] customers . . . [and] stock[ing] shelves" from her start date of September 5, 2017 through her termination on April 3, 2020 (Doc. 78, p. 13).

   With respect to hours and form of payment, the defendants assert that prior to December 2019, the plaintiff's odd jobs would only last thirty minutes to an hour, "a few times each month" and that she performed these "at most . . . two to three times a week," however, it was "rare" for her to do three odd jobs a week (Doc. 76-4, p. 1) The defendants further state that for any time period—both after December 2019 and before—the plaintiff "never worked over 40 hours in any given workweek" (Doc. 76, p. 3). As for form of payment, the defendants concede that the plaintiff was on "payroll," and thus an employee, as of December 2019, however, they have not submitted any time records reflecting that work. As noted, the defendants assert that in 2017 the plaintiff was not an employee and, further, that "there [are] no pay records for [the plaintiff] in 2017" (Doc. 72, p. 2). The defendants also rely upon cash payment records from their files, which in total show only nine cash payments to either the plaintiff or her husband in 2018 and 2019 (id., p. 3). These cash payment records are disputed by the plaintiff. The defendants concede that she may have done more than nine odd jobs during this period; however, these jobs were not recorded because, in those instances, the plaintiff received vape

product instead of cash (id.). Meanwhile, the plaintiff asserts that since September 5, 2017, until she was terminated on April 3, 2020, she worked at Vapor Rising "six to seven days each week, or about 56 hours per week" and received "cash at the end of each workday at a rate of $70 per day initially and then later $80 per day" (Doc. 78, p. 1).

The parties also disagree on the facts surrounding the plaintiff's termination. The plaintiff asserts that shortly before her termination, she was attempting to obtain a car loan (Doc. 1, p. 4; Doc. 76-1, p. 153). As part of obtaining this loan, she requested payroll records from the defendants (id.). She states that, after she received the payroll records, she informed the defendants that they contained false information and further accused the defendants of creating fraudulent payroll records (Doc. 1, p. 4–5; Doc. 76-1, pp. 154, 159). She states that after she made these complaints, she was fired (Doc. 1, p. 5; Doc. 76-1, p. 159).

The defendants provide a vastly different story of the plaintiff's termination. The defendants assert that the plaintiff is a recovering drug addict and, during "the last week or so," she began exhibiting hostile and rude behavior toward customers and staff, specifically with respect to the plaintiff's co-worker, Taylor Meade (Doc. 76, p. 14; Doc. 76-4, p. 3). Additionally, "[d]uring the last few days" of her employment, the defendants assert that Schaffer found a "small bag of cocaine in the bathroom," which he believed to be the plaintiff's because only he and the

plaintiff were working in the store that day (Doc. 76, p. 14; Doc. 76-4, p. 3–4). They further state that on the day the plaintiff was fired, Schaffer discovered that "[the plaintiff] had been posting negative posts about Vapor Rising on Facebook" and, finally, that she "yelled and caused a scene in the store in front of customers" (Doc. 76, p. 14; Doc. 76-4, p. 4). The defendants say that, for these reasons, the plaintiff was terminated.

In May 2020, the plaintiff filed suit against Vapor Rising and Schaffer, alleging claims under the FLSA for unpaid overtime wages and retaliation (see Doc. 1). After the parties conducted discovery, the plaintiff filed a Motion for Spoliation of Evidence and Miscellaneous Relief (Doc. 65) with respect to the cash payment records that the defendants destroyed in December 2020, after the case had commenced (see id.). Thereafter, both the plaintiff and the defendants filed cross-motions for summary judgment on the overtime claim and the defendants filed a summary judgment motion on the retaliation claim (see Docs. 76, 78). Accordingly, I held a hearing on both motions for summary judgment and the plaintiff's motion for spoliation of evidence.

II.

The court shall enter summary judgment only if the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Material facts are those over

6

which disputes "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant bears the burden of establishing the absence of a dispute over material facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir.1993).

Where the moving party meets its initial burden, the burden then shifts "to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir.1991). If the party opposing the motion is unable to make a sufficient showing on an element essential to its case on which it has the burden of proof at trial, the movant is entitled to summary judgment. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1438 (11th Cir. 1991).

In determining whether the moving party should be awarded summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party. Reynolds v. Bridgestone/Firestone, Inc., supra, 989 F.2d at 469. When parties file cross-motions for summary judgment, the court must view the facts in the light most favorable to the non-moving party on each motion. See Greater Birmingham Ministries v. Secretary of State for State of Alabama, 992 F.3d 1299, 1317 (11th Cir. 2021). Any reasonable doubts about the

7

facts are to be resolved in favor of the party opposing the motion for summary judgment. Id.

### III.

Under § 207 of the FLSA, "an employer may not employ his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate." Allen v. Board of Public Education, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 207(a)(1)). To prove her claim for unpaid overtime hours, the plaintiff must show that (1) she worked overtime without compensation and (2) that the defendants knew or should have known of the overtime work. Id. at 1314–15.

The plaintiff asserts that she worked, on average, about 56 hours, six days a week from September 5, 2017, until her day of termination, April 3, 2020 (Doc. 78, p. 20). She states that during this time period, she would arrive at 10:00 a.m. or earlier, depending on how busy the store was, and would leave between 6:00 p.m. and 7:00 p.m. (id.). After leaving work, she states that she "would go to the post office to mail store packages and [would] arrive just as the branch was closing . . . at 6:00 p.m. [and] [s]he would frequently stay . . . 30 to 45 minutes past the 6:00 p.m. closing time . . . ." (id.). She avers that this is corroborated by the affidavit of Peggy Bankston, an employee at the post office (Doc. 86, p. 9).[4] Thus, the primary

---

[4]The plaintiff has also provided the affidavit of Jose Figueroa, a customer, at Vapor Rising in

8

source of evidence the plaintiff provides in support of her assertions are her testimony, her own affidavit, and the affidavit of Peggy Bankston.

The plaintiff testified that, "[t]here wasn't a typical day" at Vapor Rising (Doc. 76-1, p. 32). She stated that she would often arrive to work "[w]hen Joseph Schaffer told [her] to," including before the store "opened" (id., p. 35). However, the term "opened" is used loosely. Thus, she stated that opening hours varied because "[a]ny customer that knocks on the door can come in prior to opening" and that "the Open and Closed sign at Vapor Rising does not exist . . . [John Schaffer] lets people in there if they knock on the door" (id., p. 36). As discussed, she states that she would often leave work around 6:00 p.m. and 7:00 p.m. and then would mail packages at the post office (Doc. 78, p. 20).

Furthermore, the tasks she did for Schaffer were equally non-typical. The plaintiff would do "odd jobs" such as cleaning outside, mowing the lawn, and even baking cakes (see Doc. 76-5; see also Doc. 77-3, pp. 90, 169, 195). Notably, the defendants had an unusual manner by which the employees were paid. As confirmed by the defendants, because employees did not have bank accounts, checks from Vapor Rising were handed back to Vapor Rising for cashing, thus, "the checks were never processed through [Vapor Rising's bank,] Bank of America, . . . pay therefore came from the cash bag" (Doc. 72, p. 4). As a result of this procedure, the

---

support of her Motion for Summary Judgment (Doc. 78) (see Doc. 77-7).

defendants did not maintain typical payroll records, although there were records from the Paychex payroll service company. The defendants state that "[w]hile other employees were on payroll prior to December 2019, Williams first appeared on the payroll records in December 2019" (Doc. 76, p. 4). They add that, "[w]hile defendants assert this is because Williams began her employment in December 2019, for the purpose of this motion it is assumed that the plaintiff was employed prior to December 2019" (id., p. 4, n.1). Under these circumstances, there is no basis for determining the period when the plaintiff worked for the defendants, or how many hours that she worked. Thus, neither side is entitled to summary judgment on the claim of overtime work.[5]

## IV.

The plaintiff alleges that the defendants retaliated against her by firing her "when she complained to the Defendants about their failure to keep FLSA compliant records . . . [and] objected to[sic] the fact that the Defendants were

---

[5]The parties discuss two issues that do not need to be resolved. Thus, the plaintiff in a motion refers to "the Application of *Anderson v. Mt. Clemens Pottery*, [328 U.S. 680 (1946)] for Burden-Shifting at Trial" (Doc. 65, p. 1) (emphasis in original). The plaintiff asserts that, "under *Anderson* . . . where the employers' records are inaccurate or inadequate, 'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." (Doc. 86, p. 8; Doc. 78, pp. 18–19). That motion prompted the defendants to address the complex issue of <u>Anderson</u> v. <u>Mt. Clemens</u> at length. However, as the plaintiff appropriately recognized, that issue is properly left for trial. The parties also discuss whether the plaintiff should be considered to be an independent contractor. However, at the hearing, the defendants stated that they are not claiming that the plaintiff is an independent contractor (<u>see</u> Doc. 105). Therefore, this issue also does not need to be addressed.

willfully falsifying their payroll records" (Doc. 1, p. 8). The Defendants move for summary judgment on the plaintiff's retaliation claim because she "has failed to produce any evidence that she engaged in protected activity . . . [and] she has failed to show Defendant's legitimate non-retaliatory reasons for her discharge were pretextual" (Doc. 76, p. 7).

The FLSA prohibits any person from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or caused to be instituted any proceeding under or related to [the FLSA]." See 29 U.S.C. § 215(a)(3). When, as here, an FLSA claim for retaliation is based on circumstantial evidence, as opposed to direct evidence, the court will apply the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 802–04 (1973). Under that framework, a plaintiff first must establish a prima facie case of retaliation, which requires showing that (1) the plaintiff engaged in protected activity, (2) the plaintiff subsequently suffered an adverse employment action by the defendant, and (3) a causal connection existed between the plaintiff's activity and the defendant's adverse action. See Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000).

If shown, these factors establish a presumption that the defendant retaliated against the plaintiff and the burden then shifts to the defendant employer to produce evidence that it took the adverse action for a legitimate, non-retaliatory

11

reason. Id. at 1343. If the defendant produces such evidence, then there is no longer a presumption of retaliation. Id.; see also Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). The burden then shifts back to the plaintiff to produce evidence that the reason for the adverse action is pretext. See Wolf v. Coca-Cola Co., supra, 200 F.3d at 1343; see also Combs v. Plantation Patterns, supra, 106 F.3d at 1528.

Furthermore, in determining a motion for summary judgment on a retaliation claim where the defendant has shown a legitimate, non-retaliatory reason for its actions, the court is required to, "in view of all the evidence, determine whether plaintiff has cast sufficient doubt on the defendant's . . . reasons to permit a reasonable factfinder to conclude that [those reasons] were not what actually motivated its conduct." Combs v. Plantation Patterns, supra, 106 F.3d at 1538 (internal quotation marks omitted).

The defendants indicate that they do not challenge that the discharge is an adverse action, but do contest the other elements of the plaintiff's prima facie case (Doc. 76, p. 8).

The defendants contend that the plaintiff has not established that she engaged in a protected activity, but that argument is not persuasive. Notably, to be considered a protected activity, an employee is not required to make a formal complaint under the FLSA to an employer; rather informal complaints that implicate

12

the statute are satisfactory. See EEOC v. White and Son Enterprises, 881 F.2d 1006, 1011–1012 (11th Cir. 1989); see also Bennett v. School Board of Madison County, Fla., 4:06CV155-RH/WCS, 2007 WL 9735151 at *3 (N.D. Fla. May 29, 2007), aff'd sub nom. Bennett v. School Board of Madison County, 265 Fed. Appx. 876 (11th Cir. 2008) citing Burnette v. Northside Hospital, 342 F.Supp. 2d 1128, 1134 (N.D. Ga. 2004) ("[i]n other words, the fact that an employee does not refer specifically to the FLSA does not mean his informal complaint is unprotected, so long as the complaint concerns the employer's wage and hour practices.").

To be considered a protected activity, the employee's actions "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met, however, by oral complaints, as well as by written ones." Kasten v. Saint-Gobain Performance Plastic Corp., 563 U.S. 1, 14 (2011).

The plaintiff testified that while in the process of obtaining a car loan, she "told the place where I was getting [the] loan . . . exactly what I made" and, as part of this, on April 2, 2020, asked Schaffer—by way of text message—for "[her] last three [pay] stubs" (Doc. 76-1, pp. 153, 158). She states that Schaffer told her that "Ms. Taylor Meade ripped them up [and] that he does not have them" (id., p. 154). As a result, she received the records directly from Paychex payroll service.

13

Upon receiving the records, she claimed that "they were fraudulent pay stubs [and that] [t]he payroll is nonexistent; it's fraud" (id.). She further testified that she told Schaffer that "it looks like fraud . . . [and that] he needed to fix it" and also averred that "I complained that the payroll record was fraud" (id., pp. 158, 161). It appears this complaint may have also occurred over the phone and in person, as Schaffer testified that on April 2, 2020, the plaintiff came to the store "for income verification" and that "she got upset" when he told her that "he wouldn't change [the records]" (Doc. 77-3, pp. 306, 307).

The plaintiff argues that her complaint about the pay records being fraudulent "fits *squarely* within the definition of protected activity" (Doc. 86, p. 17) (emphasis in original). Thus, she asserts that "Section 215's 'prohibited acts' specifically includes violations of Section 211's recordkeeping requirement" (id.). These facts, when viewed in a light most favorable to the plaintiff, would permit a jury to find that she engaged in protected activity.

As to the element of causation, the defendants merely state "[the plaintiff] cannot overcome the . . . prong of causation because of Defendants' legitimate, non-retaliatory reasons for discharge" (Doc. 76, pp. 15–16). However, the assertion of legitimate, non-retaliatory reasons does not go to the element of causation.

To prove causation, the plaintiff "must prove that the adverse action

14

would not have been taken 'but for' the assertion of FLSA rights." <u>Wolf</u> v. <u>Coca-Cola Co.</u>, <u>supra</u>, at 1343. This element can be shown if the plaintiff can prove a "close temporal proximity" between the time that the defendant employer learned of the protected activity and the alleged retaliatory conduct. <u>Raspanti</u> v. <u>Four Amigos Travel, Inc.</u>, 266 Fed. Appx. 820, 823 (11th Cir. 2008) (internal citation omitted). However, temporal proximity "requires that the actions be 'very close.'" <u>Id.</u> (internal citation omitted).

Here, the plaintiff relies on temporal proximity to show causation. She asserts that the "[d]efendants admit Plaintiff was terminated by Schaffer *the day after* Plaintiff complained about the inaccurate wage records" (Doc. 86, p. 22) (emphasis in original). As indicated, the plaintiff's complaint occurred on April 2, 2020, and she was terminated on April 3, 2020. Thus, the plaintiff is correct that "[s]uch close temporal proximity [can] easily make out prima facie causal connection" (<u>id.</u>).

Notably, though, the Eleventh Circuit has indicated that a plaintiff relying on temporal proximity in order to establish causation must, additionally, overcome the defendants' legitimate, nondiscriminatory reason for the adverse action. <u>See</u> <u>Wolf</u> v. <u>Coca-Cola Co.</u>, <u>supra</u>, at 1343; <u>see also</u> <u>Everett</u> v. <u>Grady Memorial Hospital Corp.</u>, 703 Fed. Appx. 938, 950 (11th Cir. 2017) (providing that because the defendants provided legitimate, non-retaliatory reasons for the adverse action, the plaintiff must also show that these reasons were pretextual).

15

The defendants assert that there are four legitimate, non-retaliatory reasons for the plaintiff's termination: "(1) Plaintiff was discharged because she yelled and caused a scene in the store in front of customers . . . (2) Plaintiff had made negative posts on Facebook about Vapor Rising . . . (3) Plaintiff had engaged in bullying behavior toward employee Taylor Meade . . . and (4) [sic] because Defendant Schaffer found drugs in the store bathroom on a day only he and Plaintiff were working" (Doc. 76, p. 14). The plaintiff argues that the defendants' reasons are pretextual, "or at a minimum, there are disputes of material facts as to the Defendants' reasons" (Doc. 86, p. 22).

To show pretext, a plaintiff must "'come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." Jones v. Gulf Coast Health Care of Delaware, LLC, 854 F.3d 1261, 1274 (11th Cir. 2017) (internal citation omitted).

Notably, the close temporal proximity of the plaintiff's termination to her protected activity may be evidence of pretext. See Hulbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1298 (11th Cir. 2006) (providing that "[t]he close temporal proximity between [the plaintiff's] request for leave and his termination— no more than two weeks, under the broadest reading of the facts—is evidence of

pretext, though probably insufficient to establish pretext by itself.") (internal citation omitted). Also, pretext may be shown in other ways, such as showing that "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" Jones v. Gulf Coast Health Care of Delaware, LLC, supra, 854 F.3d at 1274 (internal citation omitted).

As for the first two reasons, the plaintiff and the defendants simply have different, conflicting stories. While Schaffer testified that the plaintiff made a scene in front of three customers the day before her termination, the plaintiff testified that there was nobody in the store (Doc. 77-3, p. 361; Doc. 76-1, p. 165). Further, Schaffer testified to "negative Facebook postings" by the plaintiff on the same day she caused the big scene, while the plaintiff testified that her "post did not use Vapor Rising's name, no one knew where she worked," and that she "put [Schaffer's] son in a one-person-only group so that [only] he could see [the post]. I did not put it where everyone could see it" (Doc. 86, p. 23; Doc. 76-1, p. 78). Additionally, I note that there appears to be a factual dispute between the plaintiff's and Schaffer's testimony about when the plaintiff was in the store during the date of her termination.

As for the third reason, that the plaintiff bullied Taylor Meade, the plaintiff states that this was not one of the reasons proffered by Schaffer in his text message to the plaintiff where he terminated her (Doc. 86, p. 24). This appears to

have been confirmed by Schaffer at his deposition (see Doc. 77-3, pp. 327, 361). Thus, the plaintiff asserts that this disconnect "is another example of shifting reasons for termination" (Doc. 86, p. 24).

As to the fourth reason, the plaintiff's alleged cocaine use, the plaintiff also presents facts that may allow a jury to find this reason to be merely pretextual. For instance, the plaintiff testified that she never tested positive for cocaine (Doc. 86, p. 23; Doc. 76-1, p. 141). Schaffer, at his deposition, testified that the plaintiff had "tested positive for cocaine" and that he had found "a little baggie with like cocaine in the trash" (Doc. 77-3, p. 316). However, then Schaffer, upon questioning, stated that he never called the police about the cocaine baggie he found, never did an investigation on this baggie, and never conducted a drug test on the plaintiff for cocaine—or any drug—where she tested positive (id., p. 317).

Furthermore, I note that Schaffer asserted at his deposition that a reason for firing the plaintiff was that she "stole a package [and] wasn't functioning right."[6] However, Schaffer, upon questioning, stated that he did not call the police about the stolen package and never conducted an investigation about the stolen package (id.). While stealing a package is, understandably, a legitimate reason for discharge, the

---

[6]Schaffer later elaborated at this deposition that by "wasn't functioning right" he meant that the plaintiff was "speeding all around, walking fast, bumping into things. She was handing out the wrong coils . . . [and that] [t]wo days in a row, she walked out with brown bags . . . under her arm . . . just she was all over the place" (Doc. 77-3, p. 318).

defendants did not assert in their motion for summary judgment that this was one of their legitimate, non-retaliatory reasons for her discharge (see Doc. 76, p. 14).

Thus, "the plaintiff has cast sufficient doubt on the defendant's [proffered] reasons." Kubiak v. S.W. Cowboy, Inc., 164 F. Supp. 3d 1344, 1365 (M.D. Fla. 2016) (quoting Combs v. Plantation Patterns, supra, 106 F.3d at 1538). A jury could ultimately accept the defendants' version of events and, thus, find that their proffered reasons for terminating the plaintiff were legitimate. However, at this stage, due to the sharply different factual disputes between the parties—and in viewing the facts most favorably to the plaintiff—it is inappropriate to grant the defendants summary judgment on this issue.

## V.

The plaintiff filed a Motion for Spoliation of Evidence and Miscellaneous Relief (Doc. 65) and then appears to reassert her arguments in her subsequent Motion for Summary Judgment (Doc. 78). The arguments made in both motions are not meritorious.

In her spoliation motion, she asserts that "[t]he Defendants kept records of their cash payments to Plaintiff, but destroyed all of them in about December 2020, seven months after this case commenced, while discovery was ongoing" (Doc. 65, p. 2). In support of this assertion, she cites to the deposition of Schaffer, where he said that cash payment records at Vapor Rising were destroyed every three years

19

as part of its normal course of business (id., p. 5). She argues that, because she was primarily paid in cash "on a per-day basis," the destruction of these records puts her at a disadvantage at trial because such records "would be indicative of the number of days worked and number of hours worked per week" (id., p. 3). As a remedy for this, she requests that the court permit a jury instruction that she "worked 56 hours per week" or, alternatively, that the court permit a jury instruction that states the defendants destroyed this evidence and it should be presumed such evidence was harmful to their case, that the defendants be sanctioned, and lastly that "Anderson v. Mt. Clemens Pottery for Burden-Shifting at trial" be applied (id., p. 13).

The defendants filed a response to the plaintiff's motion. The defendants denied the allegation that spoliation occurred. They conceded that Vapor Rising's policy was to destroy records, such as cash payments, every three years, and, thus, "[a]t the end of 2020, records from 2017 would be destroyed" (Doc. 72, p. 2). However, the defendants then stated that they "pulled all records for 2018 and 2019 showing the cash payments made to Plaintiff and/or Plaintiff's husband both for odd jobs done [for] Vapor Rising and . . . Joseph Schaffer" (id., p. 3). In connection with this assertion, they provided these cash payment records—for 2018 and 2019—in the body of the motion and as an exhibit (see id.; see also Doc. 72-1).

In the Plaintiff's Motion for Summary Judgment (Doc. 78), she reasserts an abridged version of her argument for an adverse jury instruction made

in the Motion for Spoliation of Evidence and Miscellaneous Relief (Doc. 65). However, given the fact that the 2018 and 2019 records are now accounted for, it is presumed she is now only referring to any 2017 records that were destroyed in December 2020.

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending reasonably foreseeable litigation." Graff v. Baja Marine, 310 Fed. Appx. 298, 301 (11th Cir. 2009) (internal citation omitted). The party seeking spoliation, and spoliation sanctions, carries the burden of proving spoliation. See Managed Care Solutions, Inc. v. Essent Healthcare, Inc., 736 F. Supp. 2d 1317, 1322 (S.D. Fla. 2010). Thus, the party must show that (1) the missing evidence existed at one time, (2) the alleged spoliator had a duty to preserve the evidence, and (3) the evidence was crucial to proving the movant's prima facie case or defense. Flury v. Daimler Chrysler, 427 F.3d 939, 944 (11th Cir. 2005); see also Green Leaf Nursery v. E.I. DuPont De Nemours and Company, 341 F.3d 1292, 1308 (11th Cir. 2003); see also Managed Care Solutions., Inc. v. Essent Healthcare, Inc., supra, 736 F. Supp. 2d at 1322. However, even if these three elements are met, sanctions are only appropriate when there is evidence of bad faith. Thus, while malice is not required to show bad faith, more than mere negligence in either losing or destroying evidence must be shown. Mann v. Taser Intern., Inc., 588 F.3d 1291, 1310 (11th Cir. 2009). Further,

if direct evidence that shows bad faith is not available, bad faith may be inferred "where the responsible party engaged in an affirmative act causing the loss of evidence, [that] it did so while it knew or should have known of a duty to preserve the evidence, and the affirmative act cannot be credibly explained as not involving bad faith." New Concept Dental v. Dental Resources Sys., Inc., 17-CV-61411, 2020 WL 3303077 at *5 (S.D. Fla. Mar. 17, 2020) (internal citation omitted).

   The only records that could be the basis for finding spoliation would be the 2017 cash payment records. Further, since the plaintiff does not claim that she started working at Vapor Rising before September 5, 2017, the only records that were seemingly destroyed are from September, October, November, and December of 2017. It might reasonably be inferred that since there were cash payment records from 2018 and 2019, there was also such records from the last four months of 2017. On the other hand, even if there is an inference that there were some cash payment records from the last quarter of 2017, there is no reason to think that those records were volumninous. Thus, the cash payment records from 2018 to 2019 were meager and there is no indication that the records for the end of 2017 would be any more fulsome. Moreover, Schaffer asserted that instead of cash payments, "nine out of ten [times], [the plaintiff and her husband] wanted e-liquid [product]" (Doc. 77-3, pp. 50–51, 52, 55).

   The plaintiff argues that the defendants had a duty to preserve the 2017

cash payment records. In reliance of this assertion, the plaintiff asserts that the defendants knowingly destroyed the cash payment records after litigation had commenced, and, additionally, plaintiff cites to the FLSA Scheduling Order in support of her argument (Doc. 7).

When dealing with issues of spoliation, courts must not hold the prejudiced party, in this instance the plaintiff, to "too strict a standard of proof regarding the likely contents of the destroyed evidence because doing so allows the spoliators to profit from the destruction of evidence." Southeastern Mechanical Services, Inc. v. Brody, supra, 657 F. Supp. 2d 1293, 1300 (11th Cir. 2009) (internal citation omitted). Notably, though, it should not be assumed that the missing evidence was unfavorable, unless the circumstances surrounding the evidence's destruction would indicate bad faith. Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). When evidence is destroyed substantially, or completely, by a spoliator, such actions would justify a finding that the destroyed evidence prejudiced the plaintiff. Southeastern Mechanical Services, Inc. v. Brody, supra, 657 F. Supp. 2d at 1300 (internal citation omitted).

The plaintiff also asserts that she sent the defendants an evidence preservation letter on "April 20, 2020 [before] this action [was] filed on May 27, 2020" and that, eight months later, the defendants destroyed cash payment records for 2017 in December 2020 (Doc. 65, p. 8). The plaintiff asserts that this letter

instructed the defendants to hold "'all texts, emails, pay records, time records, and personnel records of all kinds'" (id.). Furthermore, the plaintiff cites to the FLSA Scheduling Order (Doc. 7) issued by District Judge Thomas P. Barber, which states that the defendants were to turn over "all time sheets and payroll records in Defendant's possession, custody or control that pertain to work performed by Plaintiff during the time period for which Plaintiff claims unpaid wages" (id., p. 2).

The defendant's response is that the records that were destroyed were cash payment records—not pay records, time records, or personnel records as requested by the plaintiff in her letter or as required by the FLSA scheduling order (Doc. 90, p. 2). And I note that if the defendants thought that the cash payment records were probative on the issue of hours worked, and thus should be destroyed, they would have also destroyed cash payment records for 2018 and 2019.

In all events, in order to establish spoliation, the moving party must show that the evidence was crucial and, thus, they must "show a significant impairment in the ability to prove their underlying case." Green Leaf Nursery v. E.I. DuPont De Nemours and Company, supra, 341 F.3d at 1299. If a party can "still . . . prove its case through additional already obtained evidence," then the alleged spoliated evidence is not deemed to be crucial to a plaintiff's claims. See Managed Care Solutions, Inc., supra, 736 F. Supp. 2d at 1327.

The plaintiff does not make any meaningful attempt to show that the

destruction of the cash payment records from the last quarter of 2017 were crucial to any claim or defense. The plaintiff merely makes the conclusory assertion that "[t]he Plaintiff was prejudiced by Defendants' conduct/destruction of records because such records would have established the inaccuracy of Defendants' payroll documents and lack of a good faith defense to liquidated damages, among other things" (Doc. 78, p. 6). The plaintiff adds that "[t]he records also would have shown the volume of work performed by the Plaintiff in each week" (id.). But she does not say how. Significantly, the plaintiff makes no attempt to extrapolate from the 2018-2019 cash payment records to a showing regarding the last quarter of 2017.

Lastly, even if the plaintiff satisfied all three elements—which she did not—she still must prove that the defendant acted in bad faith in order to prevail on the claim of spoliation. Flury v. Daimler Chrysler, supra, 427 F.3d at 944. However, the circumstances of this cause do not demonstrate bad faith.

The plaintiff claims that the bad faith conduct was the destruction of cash payment records from the last four months of 2017. However, the defendants had cash payment records from 2018 and 2019 and they turned those records over to the plaintiff. If, as the plaintiff asserts, the 2017 records were destroyed to hide unfavorable evidence, then logically the defendants would have destroyed the records from 2018 and 2019. The fact that they did not do that negates the contention that the cash payment records supported the plaintiff's claim of overtime work.

25

Rather, the production of these records corroborates the defendants' claim that the 2017 records were destroyed pursuant to the defendants' policy of destroying records that were three years old. That policy does not establish bad faith.

While there were production requests, the defendants could reasonably construe those requests not to cover the cash payment records. That is particularly so in light of the defendants' haphazard business practices. In light of that circumstance, it could reasonably be thought that the defendants routinely destroyed the records. That also does not amount to bad faith.

In all events, the defendants' production of the 2018 and 2019 cash payment records refutes a contention that the destruction of the 2017 records was done in bad faith. Consequently, for those reasons, the motion for spoliation should be denied.

## VI.

For these reasons, I recommend that the defendants' motion for summary judgment and the plaintiff's motion for summary judgment be denied. Furthermore, I recommend that the plaintiff's motion for spoliation be denied.

Respectfully submitted,

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

DATED: February 24, 2022.

26

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. 636(b)(1)(C). Under 28 U.S.C. 636(b)(1), a party's failure to object to this report's proposed findings and recommendations waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions.

27